IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| LEONARD TEJEDA PEREZ, | ) | |
| | ) | |
| Petitioner, | ) | Civil Action No.: 3:26-cv-00745-CB |
| | ) | |
| v. | ) | |
| | ) | |
| LEONARD J. ODDO, JR., et al., | ) | Chief Judge Cathy Bissoon |
| | ) | |
| Respondents. | ) | |

**MEMORANDUM AND ORDER**

For the reasons that follow, the Court will grant in part Petitioner's Petition for Habeas

Corpus (Doc. 1).

**I.    MEMORANDUM**

Petitioner represents that he is a native and citizen of the Republic of Cuba ("Cuba") who

was paroled into the United States on May 6, 2024, and has resided in the country ever since.

See Pet. (Doc. 1) at ¶ 1; Pet. Ex. 1 (Doc. 1-2) at 9.  On entry, he was simultaneously given a

Notice to Appear ("NTA") document initiating removal proceedings.  See Doc. 1-2 at 6.  After

being present in the United States for the requisite one year, Petitioner on May 16, 2025, filed an

application with United States Citizenship and Immigration Services ("USCIS") to adjust his

status and obtain a green card under the Cuban Adjustment Act of 1966 ("CAA").  See Doc. 1 at

¶ 14; Doc. 1-2 at 11; Pub. L. No. 89-732, § 1, 80 Stat. 1161, 1161 (codified as amended at 8

U.S.C. § 1255).  Petitioner's removal proceedings were terminated on August 8, 2025, due to his

pending application and the immigration judge's finding that he had "established prima facie

eligibility for adjustment of status to permanent resident under the Cuban Adjustment Act."

Doc. 1-2 at 14; see Doc. 1 at ¶ 63.  However, since then, the Executive Branch has placed an

1

indefinite adjudicatory hold on all such applications by Cubans, and Petitioner's application is still pending.  See Doc. 1 at ¶ 67; U.S. Citizenship & Immigr. Servs., PM-602-0192, Hold and Review of all Pending Asylum Applications and all USCIS Benefit Applications Filed by Aliens from High-Risk Countries 1 (Dec. 2, 2025); Presidential Proclamation 10949, Restricting the Entry of Foreign Nationals to Protect the United States from Terrorists and Other National Security and Public Safety Threats, 90 Fed. Reg. 24497, 24499, 24501–02, §§ 1(g), 3(b) (June 4, 2025).

On February 27, 2026, Petitioner was detained and put in removal proceedings once more.  See Doc. 1 at ¶¶ 1, 64–65.  He has been held in detention without a bond hearing ever since, despite reporting having had lawful full-time employment, a young child in the United States and no criminal history of any kind.  See Doc. 1 at ¶¶ 24, 64, 70–71; Doc. 1-2 at 6–7.  Moreover, the immigration judge has denied two motions to terminate removal proceedings to allow USCIS—which Plaintiff asserts has exclusive jurisdiction over his CAA application—to adjudicate his application, and has instead indicated an intent to order him removed.  See Doc. 1 at ¶¶ 50–51, 68–69; Doc. 1-2 at 19–20; 8 C.F.R. §§ 245.2(a)(1), 1245.2(a)(1)(ii); Matter of Martinez-Montalvo, 24 I. & N. Dec. 778, 783 (B.I.A. 2009) (confirming that these regulations grant USCIS exclusive jurisdiction over CAA applications by "arriving [noncitizens]" [1] in removal proceedings, subject to limited exceptions not applicable here).

Petitioner seeks in summary: (1) an order enjoining Respondents from transferring Petitioner outside the Western District of Pennsylvania, pending resolution of his Petition; (2) a declaration that Petitioner's detention is unlawful and an order requiring Respondents to release

---

[1] The Court uses the word "noncitizen" here in place of the word "alien," which is defined as "any person not a citizen or national of the United States."  8 U.S.C. § 1101(3).

him or provide him with a bond hearing within five days; (3) an order that Respondents terminate Petitioner's removal proceedings or staying the issuance of a removal order until USCIS adjudicates his CAA application; and (4) an Order requiring USCIS to adjudicate Petitioner's CAA application within five days. See Doc. 1 at 31; Pet'r's Reply (Doc. 7) at 5.

### A. Detention

Petitioner contends that Respondents have incorrectly subjected him to mandatory detention without a bond hearing under 8 U.S.C. § 1225(b)(2)(A), rather than discretionary detention under Section 1226(a), violating both these Sections and the Suspension Clause of the United States Constitution, the Procedural and Substantive Due Process Clauses of the Fifth Amendment and the Eighth Amendment (Counts I through VI). See Doc. 1 at ¶¶ 74–148; U.S. Const. art. I, § 9, cl.2; U.S. Const. amends. V, VIII.

Section 1225(b)(2)(A) mandates that "in the case of a[ noncitizen] who is an *applicant for admission*, if the examining immigration officer determines that [a noncitizen] *seeking admission* is not *clearly and beyond a doubt entitled to be admitted*, the [noncitizen] *shall be detained* for a proceeding under section 1229a of this title." 8 U.S.C. § 1225(b)(2)(A) (emphasis added).

Petitioner does not seem to dispute that he is an "applicant for admission." See 8 U.S.C. § 1255(a)(1) (defining an "applicant for admission" to include a noncitizen "present in the United States who has not been admitted").[2] He also maintains that he qualifies as an "arriving [noncitizen]." See Doc. 1 at ¶¶ 50–51; 8 C.F.R. § 1.2 (defining "arriving [noncitizen]" to include

---

[2] Petitioner has applied for admission under the CAA; his grant of parole does not count as an admission. See Doc. 1-2 at 9 (listing Petitioner's class of admission as "DT" on his I-94 parole document, indicating a grant of parole); see, e.g., 8 U.S.C. § 1182(d)(5)(A) (directing that parole under this section "shall not be regarded as an admission").

3

an "applicant for admission coming or attempting to come into the United States at a port-of-entry")[3]. He contends, however, that neither categorization means he is "seeking admission" under the meaning of Section 1225(b)(2)(A) because he entered the United States over two years ago and has been here ever since. See Doc. 1 at ¶¶ 1, 38, 93; Doc. 7 at 3.

Respondents do not seem to agree that Petitioner is an "arriving [noncitizen]." See Resp. (Doc. 6) at 5 n.3 (noting that "the Notice to Appear"—presumably referring to a second NTA reinitiating removal proceedings in February—instead alleges Petitioner "has not been admitted or paroled" and analyzing Petitioner's habeas case as though he entered without inspection). However, relying on Fifth and Eighth Circuit decisions and agency authority, they argue that he is both an "applicant for admission" and "seeking admission"—and therefore subject to Section 1225(b)(2)(A) detention—because these terms share a common definition. See Doc. 6 at 5–6; Buenrostro-Mendez v. Bondi, 166 F.4th 494, 503 (5th Cir. 2026) ("[A]n 'applicant for admission' is necessarily someone who is 'seeking admission'"); Avila v. Bondi, 170 F.4th 1128, 1134 (8th Cir. 2026) ("[W]e agree with the Fifth Circuit that the ordinary meanings of the phrases 'applicant for admission' and 'seeking admission' are the same."); U.S. Immigr. & Customs Enf't, Interim Guidance Regarding Detention Authority for Applicants for Admission 1 (July 8, 2025) (applying Section 1225(b)(2)(A) for the first time to all "applicants for admission," including those already long in the country); Matter of Hurtado, 29 I. & N. Dec. 216, 228 (B.I.A. 2025) (interpreting noncitizens apprehended long after entering without inspection to be "seeking admission" under Section 1225(b)(2)(A)); Matter of Q. Li, 29 I. & N. Dec. 66, 70

---

[3] The categorization of "arriving [noncitizen]" remains, even if the person is "paroled pursuant to [INA S]ection 212(d)(5)," and "even after any such parole is terminated or revoked." 8 C.F.R. § 1.2.

(B.I.A. 2025) (same, regarding noncitizens initially apprehended upon entering and released before being re-detained).

Respondents acknowledge that this interpretation of Section 1225(b)(2)(A) flies in the face of that adopted by the overwhelming majority of courts to have considered this issue.  See Doc. 6 at 6–7.  This Court has no great difficulty in joining them in holding for the same reasons that the term "seeking admission" in Section 1225(b)(2)(A) limits the application of this Section to those encountered while entering the country or shortly thereafter.  See, e.g., Cunha v. Freden, 175 F.4th 61, 69, 74–75 (2d Cir. 2026) (joining the "overwhelming majority of federal judges across the Nation" to conclude that "Section 1225(b)(2)(A) does not apply to such noncitizens . . . who were not apprehended while entering the country or shortly thereafter"); Lopez-Campos v. Raycraft, Nos. 25-1965/1969/1978/1982, 2026 WL 1283891, at *2, *4 (6th Cir. May 11, 2025) (slip copy) (holding that noncitizens "detained within the interior of the United States" "are not 'seeking admission' and are thus not subject to § 1226(b)(2)(A)'s mandatory detention scheme"); Hernandez Alvarez v. Warden, No. 25-14065, No. 25-14075, 2026 WL 1243395, at *13 (11th Cir. May 6, 2026) (slip copy) ("[Section] 1225(b)(2)(A) does not apply to Petitioners or to other present [noncitizens] not seeking admission"); Diaz v. Noem, No. 3:25-cv-458, 2025 WL 3628480, at *7 (W.D. Pa. Dec. 15, 2025) (slip copy) (joining the "*vast* majority of district courts" in finding "that § 1225 is tethered more closely to the border and § 1226 applies more readily to the interior of the country" (quoting Bethancourt Soto v. Soto, No. 25-CV-16200, 2025 WL 2976572, at *7 (D.N.J. Oct. 22, 2025)), vacated as moot, Mem. Order (Doc. No. 22) at 3 (Dec. 17, 2025) ("[T]he general legal conclusions in the Court's Opinion . . . regarding the application of §§ 1225 and 1226 remain unchanged.")); Hernandez v. Hoover, No. 3:26-cv-909, 2026 WL 1080388, at *4 (M.D. Pa. Apr. 20, 2026) (slip copy)

5

(applying the same reasoning to find that a petitioner granted humanitarian parole and released into the country was "no longer 'seeking admission' within the meaning of § 1225(b)" when detained years later (quoting <u>Saidov v. Jamison</u>, No. 26-1699, 2026 WL 789087, at *3 (E.D. Pa. Mar. 20, 2026) (slip copy))).  The Court agrees that the plain text of Section 1225(b)(2)(A) as well as Supreme Court precedent and long-standing practice support this interpretation.  <u>See</u> <u>Cunha</u>, 175 F.4th at 69; <u>Jennings v. Rodriguez</u>, 583 U.S. 281, 287 (2018) (applying Section 1226(b)(2)(A) "at the Nation's borders and ports of entry, where the Government must determine whether a[ noncitizen] seeking to enter the country is admissible").

Since Petitioner entered the United States over two years ago, he no longer can be considered to be "seeking admission," regardless of his pending CAA application or his categorization as an "arriving [noncitizen]."  <u>See</u> Doc. 1 at ¶ 1; <u>see, e.g.</u>, <u>Hernandez</u>, 2026 WL 1080388, at *4 (finding that a CAA applicant present in the country for over two years and classified as an "arriving [noncitizen]" was not "seeking admission" under Section 1225(b) and citing a string of cases holding the same).  Section 1225(b)(2)(A) therefore does not apply to him, and his detention instead is authorized by the discretionary provisions of Section 1226(a).  <u>See</u> 8 U.S.C. § 1226(a) ("[A noncitizen] *may* be arrested and detained pending a decision on whether the [noncitizen] is to be removed from the United States" (emphasis added)).  He is entitled under this Section to a bond hearing.  <u>See</u> <u>id.</u> § 1226(a)(2)(A) (authorizing release of a noncitizen on bond).  As such, the Court need not address Petitioner's remaining arguments regarding detention.

### B.  Other Relief

Next, the Court turns to Petitioner's request for an order terminating or staying removal proceedings, directing USCIS to adjudicate his CAA application or enjoining transfer. Respondents address none of these requests or the reasons for them.

Although the Court does not have authority to grant the relief that Petitioner seeks in his removal proceedings,[4] it has substantial doubts as to the legality of USCIS's apparent indefinite adjudicatory hold on all CAA applications and the propriety of any resulting order of removal under the circumstances here.[5]  Cf., e.g., Doe v. Trump, No. 1:25-cv-13946-JEK, 2026 WL 1170971, at *3, *4 n.8, *17–18, *20 (D. Mass. Apr. 30, 2026) (slip copy) (issuing a preliminary injunction against the enforcement of this same adjudicative hold policy regarding the pending USCIS applications of 22 plaintiffs—including from Cuba—as violating the Immigration and Nationality Act and the Administrative Procedure Act ("APA")); Aldo Rodriguez Lorente v. USCIS, No. 25-cv-25646-BLOOM/Elfenbein, 2026 WL 1396116, at *2, *13, *15 (S.D. Fl. May

---

[4] The propriety of ordering Petitioner removed rather than continuing or terminating his case is a question that may be addressed on a petition for review ("PFR"), and as such, the Court has no subject matter jurisdiction to enjoin an immigration judge from so ordering.  See 8 U.S.C. § 1252(b)(9) ("[N]o court shall have jurisdiction, by habeas corpus . . . , to review . . . questions of law or fact" or a final order "arising from any action or proceeding brought to remove a [noncitizen] from the United States"; Khalil v. President, 164 F.4th 259, 274 (3d Cir. 2026) (holding that Section 1252(b)(9) bars habeas claims that courts can "'meaningfully' review through the PFR ['petition for review'] process" on appeal).

[5] It appears that, but-for USCIS's adjudicative hold on Petitioner's application—filed over a year ago—Petitioner would not be removable, as he is prima facie eligible for adjustment under the CAA.  See CAA § 1 (requiring that an applicant be: (1) a native or citizen of Cuba; (2) inspected and admitted or paroled into the United States after January 1, 1959; (3) physically present in the United States for at least one year; (4) admissible to the United States or eligible for a waiver of inadmissibility; and (5) deserving of a favorable exercise of discretion); Doc. 1-2 at 3, 9, 11 (showing Petitioner's: (1) Cuban passport; (2) I-94 parole document issued May 6, 2024; and (3) USCIS receipt showing his I-485 adjustment application was received over one year later on May 16, 2025); Doc. 1 at ¶¶ 63, 70–71 (reporting that: (4) an immigration judge on August 8, 2025, found "no grounds of inadmissibility that would affect [Petitioner's] eligibility for lawful permanent residence;" and (5) Petitioner has no criminal record).

19, 2026) (slip copy) (same, under the APA, regarding the plaintiff's CAA application); Varniab v. Edlow, No. 25-cv-10602-SVK, 2026 WL 485490, at *1, *20–22, *24 (N.D. Ca. Feb. 20, 2026) (slip copy) (same, under the INA, APA, the Equal Protection Clause and the *ultra vires* doctrine, regarding two Iranian plaintiffs' applications to adjust status and for work authorization); Behdin v. Edlow, No. 26-cv-00566-SVK, 2026 WL 1031079, at *1, *22–23, *26 (N.D. Ca. Apr. 16, 2026) (slip copy) (same, under the APA, regarding 31 Iranian plaintiffs' and one Sudanese plaintiff's applications for work authorization); Saghafi v. Edlow, No. 8:26-cv-00100, 2026 WL 1127468, at *1, *10, *15 (D. Md. Apr. 24, 2026) (slip copy) (same, under the APA, regarding 83 plaintiffs' adjustment applications); Meschi v. Edlow, No. 26-cv-01993-AGT, 2026 WL 1157151, at *1–2 (N.D. Ca. Apr. 29, 2026) (slip copy) (same, under the APA, regarding the work authorization applications of twenty plaintiffs, including two Cubans); 8 C.F.R. § 1003.18(c)(3) ("[A]dministrative closure may be appropriate where a petition, application, or other action is pending outside of proceedings before the immigration judge."); 8 C.F.R. § 1003.18(d)(ii)(B) (authorizing termination of removal proceedings where an applicant for adjustment of status "is prima facie eligible for . . . lawful status" and "USCIS has jurisdiction to adjudicate the associated [] application . . . if the [noncitizen] were not in proceedings"); Ezeanuna v. Attorney Gen. of U.S., 280 Fed. App'x 139, 143–44 (3d Cir. 2008) ("An Immigration Judge's discretion to continue a hearing should be favorably exercised where a prima facie approvable visa petition has yet to be approved and a prima facie approvable adjustment of status [application] has been submitted . . . [and] a visa [is] immediately available."). Accordingly, the Court denies Petitioner's request to order his removal proceedings terminated or stayed pending USCIS's adjudication of his application.

Similarly, the Court lacks authority to grant Petitioner's request to enjoin transfer out of this district pending litigation of this case. See Sanchez Colina v. Warden of Moshannon Valley Processing Center, No. 3:25-cv-556, 2025 WL 4708724, at *2 (W.D. Pa. Dec. 23, 2025) (slip copy).

Nor is it clear on the record that the Court could order USCIS to adjudicate Petitioner's application in this context, though Petitioner clearly could seek this relief in a separate action. See Doc. 1 at ¶¶ 9, 58 (citing 28 U.S.C. § 1651 as a jurisdictional basis for the relief requested and alleging that USCIS's adjudicatory freeze violates the APA). Accordingly, the Court defers ruling on this component of the Petition at this time and will request supplemental briefing as set forth in the order below.

## II.    ORDER

For the foregoing reasons, the Court hereby GRANTS Petitioner's Habeas Corpus Petition (Doc. 1) to the extent that it requests a bond hearing in accordance with 8 U.S.C. § 1226(a) and all related provisions of law. The Court hereby ORDERS Respondents to provide Petitioner with such a hearing or release him on or before June 4, 2026. On or before June 8, 2026, Respondents shall provide notice to this Court confirming that they have provided Petitioner with a compliant bond hearing and apprising the Court of its outcome. The Court additionally ORDERS Respondents to file a response on or before June 4, 2026, as to Petitioner's requested injunction against USCIS and the Court's jurisdiction to rule on this aspect of the Petition. The Court DENIES the Petition in all other respects.

IT IS SO ORDERED.


May 28, 2026                                    s/Cathy Bissoon
                                               Cathy Bissoon
                                               Chief United States District Judge


cc (via ECF email notification):
All Counsel of Record

10